IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Theodore Gumina                :

    Plaintiff              : (Case No. 3:14-CV-99)

    V.                     :

Rite Aid Corporation           : (Judge Richard P. Conaboy)

    Defendant               :

_____

Memorandum

    Theodore Gumina (hereinafter "Plaintiff" or "Gumina", has brought this action under the Americans with Disabilities Act (42 U.S.C. §§ 12101 et seq) and the Pennsylvania Human Relations Act (43 P.S. §§ 951-963 et seq).  Plaintiff Gumina contends that Defendants Rite Aid of Pennsylvania, Inc. (hereinafter "Rite Aid" or "the company"), Michael Troutman, and Mark Firment unlawfully discriminated against him and retaliated against him due to his disability.  Both Plaintiff and Defendants have moved for summary judgment (Docs. 24 and 45) and this Court must now assess whether either party, on the basis of undisputed facts of record, is entitled to judgement as a matter of law.

## I.   Background.

    Plaintiff Theodore Gumina worked for Rite Aid and its predecessors for 25 years from March of 1987 through March of 2012. (Doc. 10, ¶ 16; Doc. 16, ¶ 16).  Plaintiff was last employed by

1

Rite Aid in the capacity of "Store Manager" at Rite Aid's Luzerne Street store in Scranton, Pennsylvania.  (Doc. 10, ¶ 17; Doc. 16, ¶ 17).  Rite Aid terminated Plaintiff's employment on or about March 9, 2012.  (Doc. 10, ¶ 18; Doc. 16, ¶ 18).  At the time of Plaintiff's termination, Defendant Troutman was a Rite Aid District Manager (and Plaintiff's immediate supervisor) while Defendant Firment was Rite Aid's Human Resources manager. (Doc. 10, ¶¶ 13-15; Doc. 16, ¶¶ 13-15).

Defendants acknowledge that Plaintiff was well-organized, friendly, and had a good personality.  (Doc. 26, ¶ 8; Doc. 73, ¶ 8).  Defendants acknowledge too that they never received complaints about Plaintiff from staff or customers.  (Doc. 26, ¶ 9; Doc. 73, ¶ 9).  Plaintiff had sufficient experience for the store manager role and good communication skills.  (Doc. 26, ¶ 10; Doc. 73, ¶ 10). Plaintiff Gumina's written performance evaluations for the years 2005 through 2009 indicated performance characterized as "exceptional" or "above expectations".  (Doc. 26, ¶ 11; Doc. 73, ¶ 11).  On March 22, 2010, Plaintiff's "Annual Performance Review FY 2010" indicated "competent" performance overall but noted that he "needs development" in two areas: (1) Sales and Merchandising Skills; and (2) Productivity and Quality of Work.  (Doc. 26, ¶ 12; Doc. 73, ¶ 12; see also Doc. 28 at 3-4).  In 2011, Plaintiff Gumina's written performance evaluation included ratings of "competent' and "needs development" in the various competencies

2

addressed by the evaluation.  (Doc. 26, ¶ 13; Doc. 73, ¶ 13).

Gumina's overall rating on the 2011 performance evaluation

deteriorated further to "needs development".  (See Doc. 29 at 4).

In approximately 2003, Gumina had been diagnosed with severe

arthritis in both knees.  (Doc. 26, ¶ 15; Doc. 73, ¶ 15).  The

record is unclear as to exactly when Rite Aid first became aware of

Gumina's disability.  This fact was communicated to Rite Aid no

later than July 7, 2010, the date that Dr. Gunnar Kosek,

Plaintiff's Gumina's personal physician, signed a note indicating

that Plaintiff "has severe arthritis of his knees and needs to sit

when possible."  (Doc. 32).  Plaintiff Gumina told Defendant

Troutman in July of 2010 that his arthritis impaired his ability to

stand and walk around the store.  (Doc. 26, ¶ 17; Doc. 73,¶ 17).

Plaintiff Gumina's arthritis limited his mobility and prevented him

from: standing dynamically for long periods without a break;

stooping, kneeling, crouching, and/or crawling; standing statically

for long periods without a break; and lifting and pushing/pulling

up to one hundred (100) pounds a distance of ten (10) feet.  (Doc.

26, ¶ 18; Doc. 73, ¶ 18).  The physical limitations described in

the preceding sentence were designated on Rite Aid's "Store Manager

Job Description" (Doc. 26-1) as "Physical Demands" that a Rite Aid

store manager would need to meet in order to "successfully perform

the essential functions of this job."  (Doc. 26-1 at 2-3).

On October 8, 2012, Rite Aid issued a "Written Counseling" to

3

Plaintiff Gumina advising him that his store had "fallen behind" and that he must make immediate and sustained improvement." (Doc. 26, ¶ 20; Doc. 73, ¶ 20; see also Doc. 34 at 1). The aforementioned "Written Counseling" was the first disciplinary action that Plaintiff Gumina had received in more than 20 years. (Doc. 26, ¶ 22; Doc. 73, ¶ 22). On November 18, 2010, Rite Aid issued a "Final Written Warning" to Plaintiff Gumina advising him that his job performance had not improved since the "Written Counseling" of the previous month and that he "must be able to meet and perform all of the responsibilities as outlined in the SM (Store Manager) job description. Immediate and sustained improvement is expected." (Doc. 26, ¶ 24; Doc. 73, ¶ 24; see also Doc. 35 at 1). The "Final Written Warning" included a space for Plaintiff Gumina to comment wherein he indicated: "I have a slight disability which limits my being on my feet and I will take the job description to my doctor for him to review and I will try to do the best I can. I will inform my DM (District Manager) what my doctor says after I see him." (Id.).

On February 14, 2011, Plaintiff Gumina's physician responded to the request that he review Plaintiff's job description by written note stating: "Patient can meet requirements for his position but does require minimal accommodations for his ongoing medical problems." (Doc. 26, ¶ 34; Doc. 73, ¶ 34; see also Doc. 37). In response to a request by Defendants that Gumina's physician

4

further clarify the extent of his physical limitations, the physician issued a more specific assessment by letter dated April 29, 2011 that indicated Gumina did not have the capacity to physically perform various tasks (see page 3, ante) that Rite Aid claims were necessary to the essential functions of his job.  (Doc. 33 at 2-3).  Dr. Kosek's comments were provided to the Defendants at some indeterminate date on or after April 29, 2011.  (Doc. 26, ¶ 38; Doc. 73, ¶ 38).

On September 22, 2011, Plaintiff Gumina received another "Written Counseling" (Doc. 39) advising him that numerous tasks required by the company were not being completed in a timely manner and that: "The failure to accomplish these tasks have been documented by recent store visits on 5/11/2011 (red) and 8/22/2011 (yellow)." [1]  Plaintiff responded to the "Written Counseling" of September 22, 2011 by stating; "I have made some suggestions to offset my limitations due to my physical disability but I feel that the company is now looking for other ways to eliminate me."  (Doc. 26, ¶ 39; Doc. 73, ¶ 39).  Rite Aide then generated a second communication (Doc. 40) to Plaintiff asking him to contact Dr. Kosek for further clarification regarding: (1) how long Plaintiff would be able to stand and/or walk through the store without a break; (2) how frequently Plaintiff would be able to stoop, kneel,

---

[1] Rite Aid's rating system for its stores was color coded such that green was synonymous with acceptable; yellow synonymous with marginal; and red synonymous with unacceptable.

crouch and/or crawl; and (3) whether Plaintiff could occasionally climb stairs and/or ladders.  (Doc. 26, ¶ 40; Doc. 73, ¶ 40).  By letter dated November 22, 2011, Dr. Kosek advised that Plaintiff could "stand and walk for ten to fifteen minutes before his knee pain became severe; bend briefly but not all the way to the floor because of unsteady balance; and could climb incline stairs one at a time slowly provided a sturdy hand railing was available; and that he should not attempt to climb ladders."  (Doc. 41).

On February 10, 2012, Plaintiff met with Defendants Firment and Troutman and reviewed Dr. Kosek's assessment of Plaintiff's ability to perform the "physical demands" set forth in the Defendant's written description of the Store Manager position. (Doc. 26, ¶ 42; Doc. 77, ¶ 42; see also Doc. 42).  At the February 10, 2012 meeting, Defendant Firment told Gumina that Dr. Kosek's letter indicates that his (Gumina's) physical limitations are such that he can no longer do the job.  (Doc. 26, ¶ 43; Doc. 73, ¶ 43). Defendant Firment's contemporaneous notes of the meeting indicate: that he reviewed Dr. Kosek's letter with the Plaintiff; that he advised Plaintiff that "we are at a point where we need to make a decision"; that the company wanted him to apply for a leave of absence; and that, if Plaintiff did not apply for a leave of absence, "we would be moving to termination."  (Doc. 26, ¶ 43; Doc. 73, ¶ 43; see also Doc. 45).  Finally, on March 9, 2012, Plaintiff Gumina received a letter from Defendants advising that his

6

employment was being terminated effective March 9, 2012 and that "on February 10, 2012 Mike Troutman and I met with you to follow up on the most recent letter from your doctor that you had submitted. At that meeting, we reviewed the entire letter, and I told you that it indicated to us that you cannot meet the requirements of your position."  (Doc. 26, ¶ 45; Doc. 73, ¶ 45).

The "essential duties and responsibilities" of a Store Manager were:

1.  Lead store associates through the execution of company business plan/objectives to drive sales, be profitable and provide a superior customer and associate experience.

2.  Attend to opening and closing the store and maintain appropriate accountability for case handling and company banking.

3.  Manage an individual store while meeting store retail budgeted sales, margin, labor expenses and overall P and L monthly results to insure operating EBITDA and income are achieved.

4.  Ensure via the use of Staff Works/Work Force Management that labor is scheduled to meet customer service needs and complete operating activities and ensure the same standards of operation are enforced in the pharmacy department.

5.   Interview, hire, train, direct, reward and discipline associates; appraise associate performance; and resolve complaints.

6.   Provide leadership and development for associates by creating career opportunities, provide regular performance feedback and demonstrate SMILE and RAPTAR behaviors to both external and internal customers and associates.

7.   Manage adherence to all regulatory and compliance legislation and policies.

8.   Perform all job duties necessary to provide a clean, safe and pleasing environment to customers and associates by following company standards for safety regulations and overall store appearance both inside and outside of the store; maintain and follow rules in Clutter Free.

9.   Maintain merchandise standards according to the POMP manual, profit planner, corporate plan-o-grams and on-going merchandise information.

10.  Participate in and supervise the preparation and accountability of retail store physical inventory and develop action plans to achieve expected results.

11.  Manage store's vendor relationships. (Doc. 26, ¶ 47;

Doc. 73, ¶ 47; see also Doc. 26-1).

Plaintiff Gumina acknowledged that the job functions listed as "Essential Duties and Responsibilities" were an overview of what was expected of a Rite Aid store manager. (Deposition of Theodore Gumina, Doc. 45-2 at 97). In addition to listing the "Essential Duties and Responsibilities" of the position of "Store Manager", the Rite Aid job description for the position set forth the "Physical Demands" that a Rite Aid store manager would be required to meet. (Doc. 33 at 2-3). There is no dispute that Plaintiff Gumina was unable to meet several of the "Physical Demands" explicitly set forth on the job description for a Rite Aid store manager. (Doc. 26, ¶ 18; Doc. 73, ¶ 18).

After receiving the Final Warning of September 22, 2011, Plaintiff Gumina made some suggestions as to how his physical limitations could be accommodated. (Doc. 45-11, ¶ 59; Doc. 49, ¶ 59). One of Plaintiff's suggestions for accommodation was that he be designated as a salaried employee as opposed to an hourly one. (Doc. 45-11, ¶ 60; Doc. 49, ¶ 60; see also Doc. 45-2 at 216). Plaintiff's second suggestion was that he be transferred to a position in which he would walk and stand less as long as he did not have to travel more than one hour to the job site. (Doc. 455-11, ¶¶ 62-63; Doc. 49, ¶¶ 62-63). Plaintiff's final suggestion was that he become a district manager assistant. (DMA), a clerical position which one operates as an administrative assistant to a

District Manager.  (Doc. 45-11, ¶ 64; Doc. 45-2 at 213).  No such assistant district manager position was available at the time Mr. Gumina suggested that as a possible alternative. (Doc. 45-11,¶ 64).[2]

## II.  Summary Judgment Standard:

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation

---

[2] Plaintiff disputes the fact that the position was unavailable (see Doc. 49, ¶ 64) but has produced no evidence that such was the case.

omitted).   The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted).   The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325.   The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255.   Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary. Nonetheless, the party opposing summary judgment must support each essential element of the claim with concrete evidence in the record. *Celotex, supra* at 322-23. This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).   Therefore, if, after making all

11

reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex, supra*, at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987). If the non-movant's evidence is merely speculative, conclusory, "or is not significantly probative, summary judgment may be granted." *Anderson, supra*, at 249-50 (internal citation omitted).

A plaintiff's mere belief is not enough to create a dispute of material fact sufficient to survive summary judgment. See *Lexington Ins. Co. V. W. Pa. Hosp.,* 423 F.3d 318, 333 (3d Cir. 2005) (holding that speculation is not sufficient to defeat a motion for summary judgment). Our circuit has stated: "...summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. V. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006).

**III. Legal Discussion.**

    **A.    Plaintiff's Motion for Summary Judgment**

Plaintiff has moved for summary judgment on Counts I (Unlawful Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act) and III (Unlawful Discrimination

on the Basis of the Pennsylvania Human Relations Act).[3]
Plaintiff's motion is premised on the assertions that: (1) the
Defendants' decision to terminate his employment was motivated by
his disability; (2) the Plaintiff was qualified to continue in his
role as store manager; and (3) that, even if Plaintiff was not
qualified to continue as a store manager without some
accommodation, Defendants did not engage in a reasonable
interactive process to accommodate his disability.

   While it cannot reasonably be argued that Plaintiff's
disability (severely arthritic knees and obesity) was not a factor
in Defendants' decision to terminate him, this fact alone is not
sufficient to make out Plaintiff's claim of unlawful
discrimination.  To state a prima facie case under the ADA, a
plaintiff must establish that he (1) has a disability(2) is a
"qualified individual", and (3) has suffered an adverse employment
decision as a result of that disability.  See Skerski v. Time
Warner Cable Company, 257 F.3d 273, 278 (3d. Cir. 2001)(citing
Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d. Cir 1998).
The Court does agree that the record the parties have developed
shows clearly that the Plaintiff has established both that he has a
disability and that he has suffered an "adverse employment
decision" (his termination) as a result of that disability.
However, the record is far less clear as to whether Plaintiff was a

---

[3] See Plaintiff's second amended complaint (Doc. 10).

"qualified person" within the meaning of the ADA at the time of his termination.

To be a "qualified individual" as that term is employed in the ADA, one must demonstrate that he, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To satisfy the statutory definition, a Plaintiff must show that "he satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires" and that he "with or without reasonable accommodation, can perform the essential functions of the position held or sought."  Deane supra at 145.  The record establishes as a matter of law that Plaintiff Gumina possesses the requisite competencies and experience for the position from which he was terminated.[4]  This case will be decided by answering the second question, whether Plaintiff continues to have the physical capacity to "perform the essential functions of the position."

In order to determine the "essential functions" of a position, the Court must consider evidence such as:

    (I)   the employer's judgment as to which functions are essential;

    (ii) written job descriptions prepared before advertising

---

[4] Witness five years of exemplary performance ratings during fiscal years 2005-2009.

or interviewing applicants for the job;

(iii) the amount of time spend on the job performing the
      function;

(iv) the consequences of not requiring the incumbent to
      perform the function;

(v)  the terms of a collective bargaining agreement;

(vi) the work experience of past incumbents in the job;
      and/or

(vii) the current work experience of incumbents in similar
      jobs.

29 C.F.R. § 1630.2(n)(3); see also Skerski, supra, at 279.

An employer's judgment as to the essential functions of a
particular job, while pertinent evidence, is not conclusive.
Skerski, supra, at 283.  It is also true that "an employer may not
turn every condition of employment which it elects to adopt into a
job function, let alone an essential job function, merely by
including it in a job description."  Davidson v. America Online,
Inc., 337 F.3d 1179, 1191 (10th Cir. 2003)(cited in Jeffrey v.
Ashcroft, 285 F.Supp 2nd. 583, 591 (M.D. Pa. 2003) (Vanaskie, J.).

In this case Plaintiff contends that the various physical
abilities listed in Defendants' job description as "physical
demands" of the job in question should not require that these
"physical demands" be considered "essential functions" of the job.
This begs the question whether the inability to perform some of the

15

physical demands of the job, which Plaintiff admittedly cannot do, necessarily compels the conclusion that Plaintiff cannot perform one or more of the essential functions of the job.  By way of illustration, does Plaintiff's inability to bend, squat, climb and slide up to 100 pounds ten feet across the floor (all abilities that his own physician indicates he does not possess) compel the legal conclusion that Plaintiff cannot perform "essential functions" of his job, i.e. "perform all job duties necessary to providing a clean, safe, and pleasing environment"; "maintain merchandise standards according to the POMP manual, profit planner, corporate plan-o-grams and on-going merchandise information"; or "participate in and supervise the preparation and accountability of retail store physical inventory"? [5]

Having carefully reviewed the briefs submitted by the parties as well as the documentary evidence and deposition excerpts that have been provided, the Court cannot say, as a matter of law, that a reasonable juror could not find that Rite Aid's reasons for firing Plaintiff Gumina were born of his inability to perform "essential functions"; nor can the Court conclude, as a matter of law, that a reasonable juror could not find that Rite Aid's stated reason for firing Plaintiff was related only to the fact of his disability and, thus, pretextual  This case must turn on the

---

[5] See "Essential Duties and Responsibilities" Nos. 8, 9, and 10 of the Rite Aid Job Description.  (Doc. 26-1 at 1).  The descriptions of these "Essential Duties and Responsibilities" are sufficiently imprecise that jurors must hear testimony regarding what each entails.

competing testimony of Plaintiff vis-a-vis that of Defendants Firment and Troutman regarding what, in practice, a Rite Aid store manager was required to do and how often, if ever, Plaintiff needed to perform the "physical demands" that were beyond his physical capacities to efficiently manage a Rite Aid retail store.  These are credibility questions, and, as such, must be submitted to a jury for a resolution.  Accordingly, Plaintiff's motion for summary judgment must be denied.

**B.   Defendant's Motion for Summary Judgment.**

Defendants' argument in support of its motion is based upon the premise that reasonable jurors presented with the evidence in this record could conclude only that Rite Aid's decision to terminate Plaintiff was motivated purely by its conviction that Plaintiff, with or without accommodation, could no longer do the job.  Thus, Defendants reason, Plaintiff has not made out a prima facie case.  Suffice it to say that we have already determined in our recitation regarding Plaintiff's motion that such is not the case.  For that reason alone, Defendants' motion must be denied.

Defendants also contend that Plaintiff's receipt of Social Security Disability Insurance Benefits dating back to March 9, 2012 (his last day in Rite Aid's employ) should operate to defeat his claims under the ADA.  There is a seeming tension between Plaintiff's receipt of SSDI and his assertion that he can perform the job of a Rite Aid store manager with appropriate

17

accommodations.  The legal prerequisite to receipt of SSDI is a finding that the claimant is incapable of performing any employment that exists "in significant numbers either in the region where such individual lives or in several regions of the country."  See 42 U.S.C. § 423(d)(2)(A).  Yet, an ADA claimant must demonstrate that he capable of performing an existing job "with or without reasonable accommodation."  See 42 U.S.C. § 12111(a).  The Supreme Court has held that "...since the SSA does not take into account the possibility of 'reasonable' accommodation in determining SSDI eligibility, an ADA plaintiff's claim that she can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that she could not perform her own job (or other jobs) without it.  An individual might qualify for SSDI under SSA's administrative rules and yet, due to specialized individualized circumstances, be capable of performing the essential functions of her job... An ADA plaintiff's sworn assertion in an application for disability benefits that she is unable to work appears to negate the essential element of her ADA claim that she can perform the essential functions of her job, and a court should require an explanation of this apparent inconsistency."  Cleveland v. Policy Management Systems Corporation, 526 U.S. 795, 796 (1999).

Plaintiff has explained (see Doc. 48 at 16; also see Gumina deposition, Doc. 45-2 at 67) that he did not apply for SSDI until August of 2014 (more than two years after he was terminated by Rite

Aid) and that by that time his physical condition had deteriorated further.  Moreover, the record in this case is devoid of any information regarding whether accommodated employment of the sort Plaintiff seeks exists in "significant numbers" in this region or anywhere else as required by 42 U.S.C. § 423(d)(2)(A). Accordingly, the Court finds that Plaintiff's explanation is sufficient to rebut Defendant's claim that it is entitled to summary judgment on this point.

The Court has an additional reservation.  Should the jurors in this case ultimately decide that Plaintiff, despite his disability, is a "qualified individual", an additional issue will arise regarding whether Defendant engaged in an appropriate "interactive process" to retain Plaintiff's services.  We certainly do not fault Rite Aid for making inquiries as to the type and degree of Plaintiff's physical impairments.  Indeed, we view such information as a necessary precursor to engaging in a meaningful interactive process.  See Taylor v. Phoenixville School District, 184 F.3d 296, 317 (3d. Cir. 1999).  However, it is unclear to the Court whether Rite Aid discharged its responsibility to be proactive under the ADA.  Our circuit has held that "both parties have a duty to assist in the search for appropriate reasonable accommodations and to act in good faith."  See Mengine v. Runyon, 114 F.3d 415, 419-20 (3d. Cir. 1997).

In this case, one of the accommodations Plaintiff requested to

insure that various plan-o-grams and seasonal displays were completed on time and inventory was stocked and redistributed as necessary was that his store be allotted more hours for his subordinates so that they could complete these tasks under his direction.  (See Doc. 45-2 at 229-230).[6]  While the Court is sensitive to the fact that an employer has considerable latitude in determining its level of staffing and the amount it will spend on payroll, "the Plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits."  Walton v. Mental Health Association of Southeastern Pennsylvania, 168 F.3d 661, 670 (3d. Cir. 1999).  Summary judgment is appropriate only "in cases in which the Plaintiff's proposal is either clearly ineffective or outlandishly costly".  (Id.).

There is no evidence in the record regarding how much money it would cost Rite Aid to staff the additional hours required to bring its store's appearance up to the desired standards.  Similarly, there is no evidence in the record which would indicate a reason why it would be clearly ineffective to provide some level of additional staffing to complete these tasks.  Consequently, it is impossible for the Court to evaluate whether the additional expense to the company would be "clearly ineffective or outlandishly

---

[6] The Court mentions only one of the accommodations suggested by Plaintiff to illustrate the potential material factual dispute on this point.  By failing to mention the other accommodations Plaintiff sought, the Court does not implicitly indicate that these other accommodations appear categorically unreasonable.

costly" as required by Walton, supra.  It may be necessary for jurors to pass on the question whether Rite Aid engaged in the requisite "interactive process" to accommodate Plaintiff's disability.

**IV.  Conclusion**

Plaintiff's Motion for Summary Judgement (Doc. 24) and Defendant's Motion for Summary Judgment (Doc. 45) both will be denied due to the Court's perception that material factual issues remain in dispute.  An Order consistent with this determination will be filed contemporaneously.

BY THE COURT

<u>S/Richard P. Conaboy</u>
Honorable Richard P. Conaboy
United States District Court

Dated: July 27, 2015

21